## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Apr 23 2019, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gordon Huncilman,

*Appellant-Plaintiff,*

v.

Jeremy Voyles Marine Repair,
LLC, and Jeremy Voyles,

*Appellees-Defendants.*

April 23, 2019

Court of Appeals Case No.
18A-CT-1958

Appeal from the Clark Circuit
Court

The Honorable Andrew Adams,
Judge

Trial Court Cause No.
10C01-1701-CT-4

**Mathias, Judge.**

[1] Gordon Huncilman ("Huncilman") appeals the Clark Circuit Court's setting aside of default judgment against Jeremy Voyles Marine Repair, LLC, and Jeremy Voyles (collectively, "Voyles") arguing that there is no evidence of excusable neglect.

[2]     We reverse.

## Facts and Procedural History

[3]     In late 2015, Gordon Huncilman ("Huncilman") met with Voyles about potentially hiring Voyles to paint his houseboat. Voyles told Huncilman that he wanted to use Awlgrip brand paint on the boat, and the two agreed that the work would be done in time for the boat to be launched in April or May of 2016. Huncilman understood that the storage facility was strict with the hours it would allow Voyles to perform the necessary work, only allowing him to work between 7:30 a.m. and 3:30 p.m.

[4]     Huncilman testified that Voyles started the work on time, but there were large lapses of time between work. Huncilman also saw that Voyles had been working on another project at the same storage facility, but not on his boat. He also observed a lot of problems with sags and runs in the paint. Huncilman did not believe that Voyles properly prepared the boat; silicone around the windows was painted over, and glue from decals had not been removed. When Huncilman spoke to Voyles about these issues, Voyles indicated to him that he would not repair or finish the boat. Voyles testified that he did the same application on Huncilman's boat that he does on hundreds of boats. He said with this particular application, another individual "down there" turned the air hoses off several times during application and that it splattered on the side of the boat. Tr. p. 45. He also testified that on another occasion, he had the stripes completely painted on one side, and someone else started a table saw and blew saw dust onto the brand new paint. After this, he re-painted the boat; however,

Huncilman had a company removing carpet glue, and that company splattered gasoline all over the fresh paint on the back of the boat. Voyles testified that he addressed these issues with Huncilman, telling him that he could not travel this far to do this job with these sorts of mishaps with other companies. Huncilman testified that he had several appointments set up with Voyles, but that Voyles never showed and did not respond to his texts. Huncilman began interviewing other painters to paint the boat. Huncilman also spoke with the paint manufacturer and secured their technical bulletin. After reviewing the technical bulletin, he felt it was "obvious" that the technical specifications had not been followed. Tr. p. 54. Because of the defects with the paint, he had the boat stripped and repainted.

[5] Voyles and Huncilman initially agreed upon a price of $10,000 for the painting work to be completed by April or May of 2016. Huncilman made two payments to Voyles, one for $3,250 and the other for $4,000. When the painting work was not completed after the passage of some time, Huncilman asked Voyles if he needed to pay additional money. Voyles asked for an additional $1,800, and Huncilman agreed to pay the additional amount upon completion. Huncilman paid Voyles and the contractor who ultimately completed the work a total of $67,614.39. The difference between Voyles's initial quote to Huncilman and the amount he ultimately paid was $55,814.39

[6] Huncilman initiated this matter against Voyles seeking monetary damages. The complaint and summons were addressed to Voyles at 3132 Utica Pike in Jeffersonville, Indiana. However, Voyles's business address is actually 3732

Utica Pike. When the complaint and summons were initially served, a law enforcement officer recognized the error in the address and served the copy on Voyles personally. After receiving the complaint, Voyles reached out to the attorney who was representing him in another matter, Richard Rush ("Rush"). Rush advised Voyles that he could not formally represent Voyles because of the potential for conflict; however, he did offer to assist Voyles with informally working the matter out with Huncilman. Rush then arranged a meeting between Voyles, Huncilman, and Huncilman's counsel. Huncilman, his counsel, and Rush proposed an amount to Voyles; however, Voyles did not like the amount in the tentative agreement and refused to sign the settlement paperwork. Rush never entered an appearance in the matter.

[7] After Voyles refused to sign the agreement, Rush sent him a letter stating

> We have spoken several times and have communicated via text message regarding the above matter. As you know, you have been sued by Gordon Huncilman. You have not filed an Answer and your deadline to file one has passed. The Agreed Judgment I assisted you in negotiating still has not been signed and [Huncilman's counsel] has indicated he will be filing for a default judgment sometime next week. Under the trial rules, he would be eligible for that to be entered immediately. As you recall, I initially told you I would not represent you in this matter because of a potential conflict of interest. I have been involved thus far because it appeared there was an amicable resolution that wouldn't pose a conflict. It is imperative that you file an Answer to the suit immediately or deliver the signed Agreed Judgment to me or to [Huncilman's counsel] directly. I am sending a copy of this letter to [Huncilman's counsel] so that he is aware that I have notified you of your rights and obligations. Should you have any questions, please do not hesitate to contact me.

Ex. Vol., Petitioner's Ex. 1. This letter is dated March 3, 2016. Rush testified that the date of 2016 was a typographical error and he sent the letter in 2017. Rush also testified that he had at least one conversation with Voyles regarding this letter before the motion for default judgment was filed. Voyles testified that he never received any pleadings or other paperwork regarding the matter other than the initial complaint and summons. On March 17, 2017, Huncilman moved for default judgment. On March 30, 2017, the trial court set a damages hearing, and Voyles did not appear. On June 12, 2017, the trial court entered default judgment against Voyles in the amount of $55,814.39 plus costs and statutory interest.

[8] Voyles later learned of the default judgment against him when his father called him and told him he had seen the award of money for Huncilman on the internet. On January 16, 2018, Voyles, through new counsel, filed an answer to the complaint and a motion to set aside the default judgment. The trial court set a hearing on this motion for February 13, 2018. This hearing was then continued to July 11, 2018. At the hearing on Voyles's motion to set aside the default judgment, Voyles testified he believed that he did not need to file a formal response to the complaint because Rush was assisting him with an informal resolution. After this hearing, the trial court set aside the default judgment. Huncilman now appeals the order setting aside default judgment.

# Discussion and Decision

[9]    Once entered, a default judgment may be set aside because of mistake, surprise, or excusable neglect so long as the motion to set aside the default is entered not more than one year after the judgment and the moving party also alleges a meritorious claim or defense. Ind. Trial Rules 55(C), 60(B). Indiana Trial Rule 60(B)(8) allows the setting aside of default judgment for "any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4). When deciding whether or not a default judgment may be set aside because of excusable neglect, the trial court must consider the unique factual background of each case because "[n]o fixed rules or standards have been established as the circumstances of no two cases are alike." *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 340 (Ind. 1983) (quoting *Grecco v. Campbell*, 179 Ind. App. 530, 532, 386 N.E.2d 960, 961 (1979)). Indiana law strongly prefers disposition of cases on their merits. *State v. Van Keppel*, 583 N.E.2d 161, 162 (Ind. Ct. App. 1991), *trans. denied*. Though the trial court should use its discretion to do what is "just" in light of the facts of individual cases, that discretion should be exercised in light of the disfavor in which default judgments are held. *Allstate Ins. Co. v. Watson*, 747 N.E.2d 545, 547 (Ind. 2001).

[10]   A ruling denying or granting relief on a motion to set aside a default judgment is entitled to deference and is reviewed for abuse of discretion. *Id*. A trial court will not be found to have abused its discretion "so long as there exists even slight evidence of excusable neglect." *Security Bank & Trust Co. v. Citizens Nat'l*

*Bank*, 533 N.E.2d 1245, 1247 (Ind. Ct. App. 1989). An appellee who does not respond to the appellant's allegations of error on appeal runs a considerable risk of reversal. *O.S. v. J.M.*, 436 N.E.2d 871, 872 (Ind. Ct. App. 1982). Where an appellee has not filed a brief on appeal, the appellant's brief need only demonstrate prima facie reversible error in order to justify a reversal. *Id.* "Prima facie, in this context, means at first sight, on first appearance, or on the face of it." *WindGate Properties, LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018). "This standard, however, 'does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required.'" *Id.* (citing *Wharton v. State*, 42 N.E.3d 538, 541 (Ind. Ct. App. 2015)).

[11] The trial court set aside the default judgment pursuant to Ind. Trial Rule 60(B)(1) & (8) on the basis "that the failure to respond was a result of actual lack of service to defendant or was due to a mistake or excusable neglect." Appellant's App. p. 42. Huncilman argues that there is no evidence to support the trial court's conclusion that there was an "actual lack of service." Huncilman also argues that there was no evidence to support the conclusion of that there was excusable neglect. Appellant's Br. at 14, Appellant's App. p. 42. Because of the facts of these particular circumstances, we address these arguments together.

[12] Initial service of a summons and complaint is governed by Indiana Trial Rule 4.1. It reads, in relevant part:

**In General.** Service may be made upon an individual, or an individual acting in a representative capacity, by:

(1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgement of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or

(2) delivering a copy of the summons and complaint to him personally; or

(3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or

(4) serving his agent as provided by rule, statute or valid agreement.

[13] A party properly brought into court is chargeable with notice of all subsequent steps taken in the cause down to and including the judgment, although he does not in fact appear or have actual notice thereof. *Vanjani v. Federal Land Bank of Louisville*, 451 N.E.2d 667, 670 (Ind. Ct. App. 1983). Absent a showing of excusable neglect, a party is bound by the proceedings occurring thereafter. *Id.*

The following facts have been held to constitute excusable neglect, mistake, and inadvertence: (a) absence of a party's attorney through no fault of party; (b) an agreement made with opposite party, or his attorney; (c) conduct of other persons causing party to be misled or deceived; (d) unavoidable delay in traveling; (e) faulty process, whereby party fails to receive actual notice; (f) fraud, whereby party is prevented from appearing and making a defense; (g) ignorance of defendant; (h) insanity or

infancy; (i) married women deceived or misled by conduct of husbands; (j) sickness of party, or illness of member of family.

*Id.* (quoting *Continental Assurance Company v. Sickels*, 145 Ind. App. 671, 675, 252 N.E.2d 439, 441 (Ind. Ct. App. 1969)).

[14] Ind. Trial Rule 55(B) references service of a motion for default judgment and states:

> **(B) Default Judgment.** In all cases the party entitled to a judgment by default shall apply to the court therefor . . . [i]f the party against whom judgment by default is sought has appeared in the action, he, (or if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required.

[15] Huncilman argues that, pursuant to Rule 55(B), whether Voyles actually received the motion for default judgment is irrelevant as the trial rule only requires that the request for default judgment be served on a party who has appeared in the action. While the language used in the trial rule indeed only explicitly requires service upon a party who has appeared, we are mindful that our supreme court has reminded us that "the important and even essential policies necessitating the use of default judgments – maintaining an orderly and

efficient judicial system, facilitating the speedy determination of justice, and enforcing compliance with procedural rules – should not come at the expense of professionalism, civility, and common courtesy." *Huntington Nat'l Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 659 (Ind. 2015). Here, it does not appear that default proceedings were used as a "gotcha" device. *Id.*

[16] The parties do not dispute that Voyles received the complaint and summons in this matter. Once Voyles received the summons and complaint, he bore the burden of appearing, keeping apprised of the proceedings, and defending himself. Additionally, Huncilman attempted to serve Voyles with the Motion for Default Judgment; the Motion for Default Judgment contains a certificate of service that contains the same incorrect address that the complaint and summons contained. Ex. Vol., Petitioner's Ex. 2a.

[17] Voyles participated in settlement negotiations and was advised by Rush by letter and in person that Huncilman intended to move for default judgment if Voyles did not appear and file an answer when settlement negotiations fell through. Moreover, once he was served with the complaint, he was chargeable with notice of subsequent actions in the matter, whether or not he received actual notice. *Vanjani*, 451 N.E.2d at 670. There are no other facts in the record to show that Voyles was otherwise incapable of appearing and defending himself. The law distinguishes neglect from excusable neglect, and we conclude in these circumstances that the neglect on the part of Voyles was not excusable.

# Conclusion

[18] Because Voyles's neglect in failing to appear and file an answer after being advised that he needed to do so in order to avoid default judgment does not constitute excusable neglect, and because we find no other reason on these facts to set aside default judgment, we reverse the trial court's order setting aside of the default judgment in this matter.

[19] Reversed.

Vaidik, C.J., and Crone, J., concur.